# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| RSUI INDEMNITY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. N13C-10-096 MMJ CCLD |
| SEMPRIS, LLC D/B/A BUDGET | ) |
| SAVERS AND PROVELL, INC. F/K/A | ) |
| BUDGET SAVERS, | ) |
| | ) |
| Defendants. | ) |

Submitted: June 23, 2014
Decided: September 3, 2014

Upon Sempris, LLC's Motion for Partial Summary Judgment
**GRANTED**
Upon RSUI Indemnity Company's Motion for Summary Judgment
**DENIED**

## OPINION

Brian L. Kasprzak, Esquire, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Thomas K. Hanekamp, Esquire (argued), Kathryn A. Formeller, Esquire, Tressler LLP, Attorneys for Plaintiff

Jennifer C. Wasson, Esquire, Richard L. Horwitz, Esquire, Michael B. Rush, Esquire, Potter Anderson & Corroon LLP, Craig C. Martin, Esquire, Christopher C. Dickinson, Esquire, Brienne M. Letourneau, Esquire (argued), Jenner & Block LLP, Attorneys for Defendants

**JOHNSTON, J.**

# FACTUAL AND PROCEDURAL CONTEXT

This insurance coverage dispute arises out of a lawsuit filed against Sempris, LLC d/b/a Budget Savers ("Sempris"). The underlying suit, *Sarah Toney, et al. v. Quality Resources, Inc., et al.* ("*Toney* Lawsuit"), is pending in the United States District Court for the Northern District of Illinois.[1]

RSUI Indemnity Company ("RSUI") issued a Directors and Officers Liability Policy to Sempris bearing policy number NHP650549 ("Policy"). The effective Policy Period ran from March 1, 2013 through March 1, 2014. The maximum aggregate limit of liability under the Policy is $3,000,000. Sempris paid a premium of $29,400 for the Policy. Sempris tendered the *Toney* Lawsuit to RSUI for coverage under the Policy. RSUI has denied that it owes a duty to defend or a duty to indemnify Sempris for the *Toney* Lawsuit.

RSUI is an insurance company organized under New Hampshire law with its principle place of business in Atlanta, Georgia. Sempris is a Delaware corporation with its principle place of business in Minnesota.

The *Toney* Lawsuit is a putative class action alleging two claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Count I – TCPA – Do Not Call Registry – alleges that the defendants made unsolicited telemarketing phone calls to the plaintiff and the class in violation of the TCPA 47

---

[1] Case No. 1:13-cv-42 (N.D. Ill.).

1

U.S.C. § 227(c) and 47 C.F.R § 64.1200(c).[2] Count II – TCPA – Autodialed Calls to Cell Phones – alleges that the defendants made improper calls to the plaintiff and others' cellular telephones using an automatic telephone dialing system and/or artificial or prerecorded voice, in violation of the TCPA 47 U.S.C. § 227(b) and 47 C.F.R § 64.1200(a).[3]

RSUI filed this action on October 8, 2013, seeking a declaratory judgment that RSUI owes no insurance coverage obligations to Sempris or Provell, Inc. f/k/a Budget Savers ("Provell"). Sempris is currently the sole defendant.[4] On February 28, 2014, RSUI filed a Motion for Summary Judgment. Also on February 28, 2014, Sempris filed a Motion for Partial Summary Judgment seeking a declaration that RSUI has a duty to defend Sempris against the underlying *Toney* Claim.

RSUI seeks summary judgment on Count II ("No Claim First Made During the Policy Period"); Count III ("Section IV., Exclusions, Paragraph 11 Precludes Coverage for the *Toney* Lawsuit"); Count IV ("The Endorsement Titled 'Exclusion – Specific' Precludes Coverage for the *Toney* Lawsuit"); Count V ("Section IV.,

---

[2] Joint Stipulation of Material Facts ("JSF"), Ex. A. ¶ 60.

[3] JSF, Ex. A ¶ 79.

[4] The parties entered into a Joint Stipulation and Order regarding Count I ("Provell Is Not An Insured Under the RSUI Policy") of the Complaint. The parties agreed that Provell is not an Insured under the Policy and is not entitled to a defense or indemnity under the Policy.

Exclusions, Paragraph 13.b Precludes Coverage for the *Toney* Lawsuit"); and Count VI ("The Endorsement Entitled 'Exclusion – Professional Errors and Omissions' Precludes Coverage for the *Toney* Lawsuit") of its Complaint for Declaratory Judgment. RSUI is also seeking summary judgment on Sempris' counterclaims for breach of contract and declaratory judgment.

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[5] All facts are viewed in a light most favorable to the non-moving party.[6] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[7] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[8] If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[9]

---

[5] Super. Ct. Civ. R. 56(c).

[6] *Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558, 560 (Del. Super. 1989).

[7] Super. Ct. Civ. R. 56(c).

[8] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Where the parties have filed cross motions for summary judgment, and have not argued that there are genuine issues of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[10] Neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.[11]

## ANALYSIS

### *Contract Interpretation*

The parties agree that Delaware law applies to this dispute.[12] Insurance contracts "are construed as a whole, to give effect to the intention of the parties."[13] Where the language of an insurance policy is "clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[14] Where the language in an insurance policy is ambiguous, it is construed in favor of the insured.[15] A contract is ambiguous when the provisions at issue "are

---

[10] Super. Ct. Civ. R. 56(h).

[11] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 744-45 (Del. 1997).

[12] JSF ¶ 19.

[13] *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007).

[14] *Id.*

[15] *Weiner v. Selective Way Ins. Co.*, 793 A.2d 434, 440 (Del. Super. 2002).

reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[16]

To determine if an insurer has a duty to defend or indemnify a claim asserted against a policy holder "the Court will look to the allegations in the underlying complaint to decide whether the action against the policy holder states a claim covered by the policy."[17] An insurer's duty to defend generally is broader than its duty to indemnify.[18] An insurer's duty to defend is triggered "where the factual allegations in the underlying complaint potentially support a covered claim."[19] "[W]here there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured."[20] The duty to defend is broad, "if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises."[21]

---

[16] *Id.*

[17] *Virtual Bus. Enter., LLC v. Maryland Cas. Co.*, 2010 WL 1427409, at *4 (Del. Super.).

[18] *Id.*

[19] *Id.*

[20] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc Basic Chems. Co.*, 1992 WL 22690, at *6 (Del. Super.) (citing *Con't Cas. Co. v. Alexis I. du Pont School Dist.*, 317 A.2d 101, 105 (Del. Super. 1974)).

[21] *Id.*

In a coverage dispute, the insured has the burden to prove that the insurance policy's provisions cover the claimed loss.[22] The burden then shifts to the insurer to prove that an exclusion applies to bar coverage.[23]

### *Relevant Policy Provisions*

The Insuring Agreement provides, in relevant part:

> In consideration of the payment of premium and in reliance upon all statements made to the Insurer in the Application, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the Insurer agrees:
>
> \*    \*    \*
>
> C.    With the Insured Organization that if a Claim for a Wrongful Act is first made against the Insured Organization during the Policy Period and reported in accordance with Section V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the Insurer will pay on behalf of the Insured Organization all Loss the Insured Organization is legally obligated to pay.

The following terms are defined in Section III of the Policy:

> B.    Claim, either in the singular or plural, means:
>    1. A written demand for monetary or non-monetary relief;
>
>    2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
>
>    a.  Receipt or service of a complaint or similar pleading;

---

[22] *First Bank of Del., Inc. v. Fidelity & Deposit Co. of Maryland*, 2013 WL 5858794, at *3 (Del. Super.).

[23] *Id.*

b. Return of an indictment (in case of a criminal proceeding); or

c. Receipt of a notice of charges; . . .

\* \* \*

K. Loss means damages (including back and front pay), settlements, judgments . . . and Defense Expenses.

The DEFINITION of Loss shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any Claim shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such Claim and is most favorable to the Insured in that regard.

\* \* \*

N. Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual or alleged Employment Practices Wrongful Act, by:

1. An Insured Person acting in his or her capacity as such and on behalf of the Insured Organization or any matter claimed against them solely by reason of their status as an Insured Person; or

2. The Insured Organization.

Section IV. of the Policy provides, in part, the following exclusions:

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured:

10. Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any Insured that was

7

commenced or initiated prior to, or pending as of 02/19/03, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

11. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a Claim, or a potential or threatened Claim, or an occurrence or circumstance that might give rise to a Claim under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

\*     \*     \*

13. With respect to INSURING AGREEMENT C. of this policy, only:

b. For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships;

The Endorsement entitled "Exclusion – Professional Errors and Omissions" provides as follows:

The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee.

The Endorsement entitled "Exclusion – Specific" provides as follows:

The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim, including but not limited to

any subsequent stockholders derivative or representative actions, made against any Insured alleging, arising out of, based upon or attributable to, directly or indirectly relating to:

*Dioquino v. Sempris, LLC*, Case No. 11-CV-05556-SJO-MRW (C.D. Cal.)
*Daniell v. Sempris, LLC*, 12-CH-44123 (Cook Cty. Ill.)
*Valencia v. Sempris, LLC*, 12-CV-2985 (S.D. Cal.)
*Herman v. Sempris, LLC*, 13-CV-0020 (W.D. Mich.)

Section V. Conditions, paragraph B.3 of the Policy ("Deemer Clause") provides as

follows:

All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy, shall be subject to Retention stated in item 4. of the Declarations Page, and shall be deemed first made when the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.

### *Prior Lawsuits and the Toney Lawsuit*

The parties contest the impact that four prior lawsuits ("Prior Lawsuits")[24]

have regarding RSUI's coverage obligations for the *Toney* Lawsuit.

- On July 6, 2011, Sempris was named as a defendant in class action lawsuit

  *Dioquino v. Sempris, LLC*.[25]  The plaintiff made an outbound telephone call

---

[24] *Dioquino v. Sempris, LLC*, Case No. 2:11-CV-05556-SJO-MRW (C.D. Cal.); *Daniell v. Sempris, LLC*, Case No. 2012-CH-44123 (Cook Cty. Ill.); *Valencia v. Sempris, LLC*, Case No. 12-CV-2985 (S.D. Cal.); *Herman v. Sempris, LLC*, Case No. 13-CV-0020 (W.D. Mich.).

to order a book sold by Wealth Systems, LLC. Wealth Systems is a partner of Sempris. The plaintiff was subsequently charged fees for Sempris' Value Plus Membership Program. The suit alleged fraud, negligence, unfair competition, and violation of the Electronic Funds Transfer Act.

- On December 13, 2012, Sempris was named as a defendant in class action lawsuit *Daniell v. Sempris, LLC*.[26] The plaintiff visited Defendant Emson's website to order a "Super Wave Oven." The plaintiff provided her billing information on the website. The order confirmation from Emson contained a link to an enrollment page for a Sempris Membership Program. The plaintiff did not click the link or opt in to join a Sempris membership program. The plaintiff was subsequently charged for membership in Sempris' Budget Savers Membership Program. The suit alleged fraud, deceptive business practices, breach of contract, and unjust enrichment.

- On December 14, 2012, Sempris was named as a defendant in class action lawsuit *Valencia v. Sempris, LLC*.[27] The plaintiff saw an infomercial for Defendant Ontel Products Corporation's ("Ontel") product Slushy Magic. The plaintiff placed an outbound telephone call to Ontel to order the Slushy Magic. The plaintiff, allegedly under the belief that he had qualified for a

---

[25] *Dioquino v. Sempris, LLC*, Case No. 11-CV-05556-SJO-MRW (C.D. Cal.).

[26] *Daniell v. Sempris, LLC*, 12-CH-44123 (Cook Cty. Ill.).

[27] *Valencia v. Sempris, LLC*, 12-CV-2985 (S.D. Cal.).

"free trial" of a program, was enrolled in Sempris Membership Program. The plaintiff did not have to repeat his billing information; however, he was charged membership fees for three months. The suit alleged violations of the Consumers Legal Remedies Act, California's Unfair Competition Law, fraud by omission, breach of contract, and unjust enrichment.

- On January 7, 2013, Sempris was named as a defendant in class action lawsuit *Herman v. Sempris LLC.*[28] The plaintiff saw an infomercial for Defendant Emson's product, the Chair Gym. Herman placed an outbound telephone call to order the Chair Gym. The Emson representative told Herman that she could not authorize the purchase of the Chair Gym without enrollment in a "risk free trial" in a Sempris Membership Program. Herman only provided his billing information one time. After placing the order, Herman immediately called the number provided by the representative and canceled his membership. Herman was subsequently charged for two nonconsecutive months of membership. The suit alleges violations of the Michigan Consumer Protection Act, the Electronic Funds Transfer Act, fraud by omission, and unjust enrichment.

- The *Toney* Lawsuit was filed on October 8, 2013. The *Toney* Lawsuit alleges that after Ms. Toney placed an online order for Stompeez children's

---

[28] *Herman v. Sempris, LLC*, 13-CV-0020 (W.D. Mich.).

11

slippers, she received several calls on her cellular telephone from Quality Resources, Inc. ("Quality Resources") to verify her order information.[29] Quality Resources is a third party telemarketer.[30] The telephone calls at issue were allegedly made using an automated dialing system without prior consent of Ms. Toney, whose cellular telephone number was on the national Do Not Call Registry.[31] After Ms. Toney's order was verified, the Quality Resources representative tried to sell Ms. Toney Sempris' Budget Savers goods and/or services.[32] Ms. Toney was never charged for membership in a Sempris program. The *Toney* Lawsuit alleges two violations of the TCPA.

### *The Toney Lawsuit falls within the Insuring Agreement*

The parties agree that the *Toney* Lawsuit meets the definition of a Claim under the Policy and reflects alleged Wrongful Acts as defined by the Policy.[33]

### The *Toney* Lawsuit is not Related to the Prior Lawsuits

RSUI argues that *Toney* does not meet the requirements of the Insuring Agreement. The Insuring Agreement provides coverage "if a Claim for a Wrongful Act is first made against the Insured Organization during the Policy

---

[29] JSF, Ex. A, ¶¶ 22-24.

[30] JSF, Ex. A, ¶ 10.

[31] JSF, Ex. A, ¶¶ 9, 45.

[32] JSF, Ex. A, ¶ 24.

[33] JSF ¶ 14.

Period . . . ." RSUI contends that the *Toney* Lawsuit is related to the Prior Lawsuits and therefore, the *Toney* Lawsuit is not a Claim first made during the Policy Period. RSUI argues that coverage is barred by Section V. Conditions, paragraph B.3, which provides in part:

> All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of circumstances, transactions or events, shall be deemed to be a single Claim for all purposes under this policy . . . and shall be deemed first made when the earliest of such Claims is first made . . . .

The Policy Period ran from March 1, 2013 through March 1, 2014. The *Toney* Lawsuit was filed on July 31, 2013, within the Policy Period. The Prior Lawsuits were filed before the Policy Period.

RSUI argues that the Court should use a broad interpretation of the phrases "arising out of" and "or in any way involving" to find that the *Toney* Lawsuit is related to the Prior Lawsuits. The Delaware Supreme Court found that "the term 'arising out of' is broadly construed to require some meaningful linkage between the two conditions imposed in the contract."[34] The United States Court of Appeals for the First Circuit found that "the 'or in any way involving' clause is a mop-up clause intended to exclude anything not already excluded by the other clauses."[35]

---

[34] *Pacific Sun Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1257 (Del. 2008).

[35] *Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.*, 734 F.3d 51, 57 (1st Cir. 2013).

The Court recognizes the precedent instructing broad interpretation of these clauses. However, the facts alleged in *Toney* are different from those in the Prior Lawsuits. In *Toney*, an outbound call was made from an autodialer to Ms. Toney's cellular telephone, which was listed on the National Do Not Call Registry. The underlying facts in the Prior Lawsuits, as alleged at the time the *Toney* Lawsuit was filed, would not give rise to a cause of action under the TCPA.

RSUI relies on *United Westlabs, Inc., et al. v. Greenwich Insurance Co., et al.*[36] in support of its position that the *Toney* Lawsuit is related to the Prior Lawsuits and, therefore, cannot be considered as a Claim first made within the Policy Period. In *Westlabs*, this Court applied an "interrelated claims" provision to bar coverage where the subsequent claim was asserted against additional defendants (who were officers of the original Defendant corporation) and included new causes of action and alleged conduct.[37]

United Westlabs, Inc. ("UWL") sought insurance coverage from two Insurers for liability and expenses stemming from UWL's dispute with Seacoast Laboratory Data Systems ("Seacoast").[38] UWL commenced arbitration with Seacoast in January 2007, alleging breach of contract.[39] Seacoast counterclaimed,

---

[36] 2011 WL 2623932 (Del. Super.).

[37] *Id.*

[38] *Id.* at *1.

[39] *Id.* at *2.

alleging breach of contract and copyright infringement ("2007 Counterclaims").[40]
UWL brought a claim against Seacoast in the United States District Court for the
Central District of California in February 2007.[41] UWL subsequently obtained
insurance policies from two Insurers. UWL did not disclose its dispute with
Seacoast to the Insurers. In December 2008, UWL brought claims against
Seacoast in United States District Court for the Central District of California
asserting that Seacoast breached the March 2007 Settlement Agreement.[42]
Seacoast filed counterclaims ("2009 Counterclaims") adding two UWL officers as
defendants.[43] The Court found the wrongful acts giving rise to the 2007 and 2009
Counterclaims were "fundamentally identical."[44] "Both involve a breach of the . . .
Agreement claim, a claim for copyright infringement or 'hacking,' and the same
facts, circumstances, situations, transactions, and events."[45]

The insurance policy at issue in *Westlabs* contained an Interrelated Claims
provision, stating: "All Claims arising from Interrelated Wrongful Acts shall be
deemed to constitute a single claim and shall be deemed to have been made at the

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at *5.

[43] *Id.*

[44] *Id.* at *11.

[45] *Id.* at *14.

earliest time at which the earliest Claim is made . . . ."[46]  The Court found that Seacoast's 2007 and 2009 Counterclaims arose from Interrelated Wrongful Acts and therefore the Counterclaims were treated as a single claim made in January 2007.[47]  The Court found that coverage was barred because the claims were deemed to have been made before the inception of UWL's policies with both Insurers.[48]

*Westlabs* is distinguishable from this case.  The underlying wrongful acts in *Westlabs* which gave rise to the 2007 and 2009 Counterclaims were fundamentally identical and arose from a dispute among the same parties.[49]  The Court is not persuaded that the facts in this case are analogous or warrant a similar finding.

The Court finds that the Prior Lawsuits are not related to the *Toney* Lawsuit. The Prior Lawsuits all arise out of a plaintiff contacting a third-party product vendor, and in that same transaction, the third party enrolls the plaintiff in, and initiates billing for, membership in a Sempris Membership Program.  In contrast, Ms. Toney placed an online order.  She subsequently was contacted by Quality Resources, a third-party telemarketer.  Unlike the prior lawsuits, both claims in *Toney* are TCPA claims.  It is this initiation of contact from an autodialer to Ms.

---

[46] *Id.*

[47] *Id.* at *15.

[48] *Id.*

[49] *Id.* at **14-15.

16

Toney's cellular telephone—listed on the National Do Not Call Registry—which gave rise to the *Toney* Lawsuit. Further, Ms. Toney never was enrolled in a Sempris Membership Program, separating her from the fraud-based claims of the Prior Lawsuits.

The date the *Toney* Lawsuit is deemed to have been filed is not affected by the Prior Lawsuits. The *Toney* Lawsuit was filed within the Policy Period, and falls within the Insuring Agreement.

### *Exclusions do not Apply to Bar Coverage for the Toney Lawsuit*

The Court finds that Sempris met its burden to prove the Claim falls within the Insuring Agreement. The burden then shifts to RSUI to demonstrate that an exception applies to bar coverage.[50]

### The Prior Notice Exclusion does not Apply to Bar Coverage

RSUI has not shown that the Prior Notice Exclusion bars coverage for the *Toney* Lawsuit. The Prior Notice Exclusion bars coverage for a Claim "[a]lleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a Claim . . . ." As previously discussed, the Court finds that the *Toney* Lawsuit is based on alleged TCPA violations and does not "arise out of" the Prior Lawsuits.

---

[50] *First Bank of Del., Inc. v. Fidelity & Dep. Co. of Maryland*, 2013 WL 5858794, at *3 (Del. Super.).

The Court has distinguished the Prior Lawsuits, which arise out of allegedly fraudulent enrollment in Sempris Membership Programs initiated through contact from the consumer.

<u>The Endorsement Entitled "Exclusion – Specific" does not Apply to Bar Coverage</u>

RSUI fails to demonstrate that the Endorsement entitled "Exclusion – Specific" bars coverage. The Exclusion – Specific provides that RSUI "shall not be liable to make any payment for Loss arising out of or in connection with any Claim . . . made against the Insured alleging, arising out of, based upon or attributable to, directly or indirectly relating to" the Prior Lawsuits. As discussed above, the Court finds the *Toney* Lawsuit does not arise out of the Prior Lawsuits.

<u>The Unfair Trade Practices Exclusion does not Apply to Bar Coverage</u>

RSUI fails to show that coverage is barred by the Unfair Trade Practices Exclusion. The Exclusion bars coverage: "For actual or alleged violation of any law . . . with respect to any of the following activities: . . . unfair trade practices or tortuous interference in another's business or contractual relationships." The Court finds that the exclusion is limited to "another's business or contractual relationships." The Court finds that the alleged tortious interference with an individual, at issue in *Toney*, is not within the scope of the Unfair Trade Practices Exclusion.

18

<u>The Professional Services Exclusion does not Apply to Bar Coverage</u>

RSUI fails to demonstrate that the Professional Services Exclusion applies to bar coverage. The Exclusion bars coverage for any "Claim made against any Insured alleging, arising out of, based upon or attributable to . . . the performance or rendering of or failure to perform professional services . . . ." To qualify as "Professional Services," as defined in the Policy, services must be "undertaken for others for a fee." The Complaint merely states: "As the company whose products and services are being sold, Budget Savers, Sempris and their clients reap the benefit of these sales calls." Similarly, in the Prior Lawsuits the complaints do not allege that fees were paid for professional services. Based on the record, the only fees generated here are the membership fees consumers pay to Sempris. The *Toney* Claim alleges that Quality Resources made calls at the direction of Sempris. There is no suggestion in the complaint that Sempris provided professional services to others for a fee. Therefore, this exclusion is not applicable to the facts in the *Toney* Lawsuit.

## **CONCLUSION**

No genuine issue of material fact exists that would prevent the Court from granting summary judgment. Sempris has met its burden to prove the *Toney* Lawsuit falls within the Policy's grant of coverage. The Court finds that the *Toney* Lawsuit, arising from alleged violations of the TCPA, is not related to the Prior

19

Lawsuits.  The Court finds that RSUI has failed to prove that any exception exists that bars coverage for the *Toney* Lawsuit.  Counts II, III, IV, V and VI are not dismissed, as requested by RSUI.  The Court finds that RSUI has a duty to defend Sempris in the underlying *Toney* Lawsuit.

**THEREFORE,** RSUI's Motion for Summary Judgment is hereby **DENIED**.  Sempris' Motion for Partial Summary Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**

/s/    *Mary M. Johnston*
The Honorable Mary M. Johnston