# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ARCH INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, CONTINENTAL CASUALTY INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, RSUI INDEMNITY COMPANY, and BERKLEY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N16C-01-104 EMD CCLD |
| DAVID H. MURDOCK, C. MICHAEL CARTER, DOLE FOOD COMPANY, INC., and DFC HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Submitted: November 6, 2017
Decided:  March 1, 2018

*Upon Plaintiffs' Motion for Summary Judgment*
***GRANTED in part and DENIED in part***

Robert J. Katzenstein, Esquire, and Kathleen M. Miller, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware.  *Attorneys for Arch Insurance Company, Liberty Mutual Insurance Company, Continental Casualty Insurance Company, Navigators Insurance Company, RSUI Indemnity Company, and Berkley Insurance Company.*

Michael R. Goodstein, Esquire, Bailey Cavalieri LLC, Columbus, Ohio.  *Attorneys for Arch Insurance Company and Liberty Mutual Insurance Company.*

Merril Hirsh, Esquire, Troutman Sanders, LLP, Washington, District of Columbia, and John R. Gerstein, Esquire and Stacey E. Rufe, Esquire, Clyde & Co. US, LLP, Washington, D.C. *Attorneys for Continental Casualty Insurance Company.*

Michael L. Manire, Esquire, and Deanna M. Galla, Manire & Galla LLP, New York, New York. *Attorneys for Navigators Insurance Company.*

Robert P. Conlon, Esquire, and Kevin A. Lahm, Esquire, Walker Wilcox Matousek LLP, Chicago, Illinois.  *Attorneys for RSUI Insurance Company.*

Ommid C. Farashahi, Esquire, Michael T. Skoglund, Esquire, and Nicholas R. Novak, Esquire, BatesCarey LLP, Chicago, Illinois. *Attorneys for Berkley Insurance Company.*

Elena C. Norman, Esquire, Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Kirk A. Pasich, Esquire and Pamela Wood, Esquire, Pasich LLP, Los Angeles, California, Mikaela Whitman, Esquire, Pasich LLP, New York, New York. *Attorneys for David H. Murdock, C. Michael Carter, Dole Food Company, Inc., and DFC Holdings, LLC.*

**DAVIS, J.**

## I. INTRODUCTION

This breach of contract case is assigned to the Complex Commercial Litigation Division of this Court. Plaintiffs Arch Insurance Company, Liberty Mutual Insurance Company, Continental Casualty Insurance Company, Navigators Insurance Company, RSUI Indemnity Company, and Berkley Insurance Company (collectively, "Insurers") are six excess insurance carriers. The Insurers filed a declaratory judgment against Defendants David H. Murdock, C. Michael Carter (collectively with Mr. Murdock, the "Individual Defendants"), Dole Food Company, Inc. ("Dole"), and DFC Holdings, LLC ("DFC").[1] The Insurers seek a declaration that they do not have to fund an underlying settlement due to Insureds' alleged breaches of the applicable insurance policies (the "Policies).[2]

On April 28, 2016, the Insureds filed a Motion to Dismiss.[3] On December 21, 2016, the Court granted in part and denied in part the Motion to Dismiss.[4] As set out more fully in the MTD Decision, the Court found that: (1) there is an actual controversy between the Insurers and

---

[1] The Individual Defendants, Dole and DFC will be referred to collectively as the "Insureds."
[2] The Insurers belong to Dole's overall package of Directors and Officers Liability insurance coverage. All are in excess of, and follow form to, Axis Insurance Company's Primary Policy and two, non-party, excess carriers: National Union Fire Insurance Company and Federal Insurance Company. *See Arch Ins. Co. v. Murdock*, C.A. No. N16C-01-104 EMD CCLD, 2016 WL 7414218, at *1 (Del. Super. Dec. 21, 2016)(the "MTD Decision"). In the MTD Decision, the Court set out the Insurers' range of coverage. *See id.*
[3] *Id.*, at *2.
[4] *Id.* at *8.

the Insureds for coverage of the Stockholder Action; but (2) under Delaware or California choice of law, the Insurers cannot subrogate against the Insured.[5]

On April 18, 2017, the Insureds filed their Amended Answer, Affirmative Defenses, and Counterclaims (the "Counterclaims"). In the Counterclaims, the Insureds argue that the Insurers acted in bad faith by not paying the Insurance Policies and are subject to punitive damages. All of the Insurers have answered the Counterclaims.

On June 30, 2017, Insurers' filed their Opening Brief in Support of Motion for Summary Judgment (the "Motion"). On August 7, 2017, Defendants filed their Answering Brief in Opposition to Plaintiff Insurers' Motion for Summary Judgment (the "Opposition"). Insurers filed their Reply Brief in Support of their Motion for Summary Judgment (the "Reply") on August 29, 2017.

On October 30, 2017, the Court held a hearing (the "Hearing") on the Motion, Opposition, and Reply. After the Hearing, the Court took the matter under advisement. This is the Court's opinion the Motion. For the reasons set forth more full below, the Motion is **GRANTED** in part and **DENIED** in part.

## II. RELEVANT FACTS[6]

The Insurers provided Dole's overall package of Directors and Officers Liability insurance coverage.[7] Dole is a Delaware corporation.[8] DFC is a Delaware LLC.[9] The Policies are in excess of, and follow form to, Axis Insurance Company's Primary Policy and two, non-

---

[5] *Id.* at *4-8.
[6] The Relevant Facts are taken from exhibits and attachments to the Motion, Opposition and Reply and, if appropriate, the pleadings.
[7] Plaintiffs' Amended Complaint for Declaratory Relief ("Compl.") ¶ 21.
[8] *Id.* at ¶ 16.
[9] *Id.* at ¶ 17.

party, excess carriers: National Union Fire Insurance Company and Federal Insurance Company.[10]

## A. RELEVANT POLICY PROVISIONS

Dole executed the Policies with the Insurers. The Policies are claims based insurance for the directors, officers, and corporate liability. The Policies contain a provision requiring that the Insured received the Insurers' written consent before action is taken (the "Written Consent Provision"). The Written Consent Provision states: "The Insureds shall not admit any liability, settle, offer to settle, stipulate to any judgment or otherwise assume any contractual obligation with regard to any Claim or Insured Inquiry without the Insurer's prior written consent, which shall not be unreasonably withheld."[11]

The Policies also contained a provision that required the Insureds to cooperate with the Insurers (the "Cooperation Clause"). The Cooperation Clause states:

> The Insurer shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part hereunder. . . . The Insureds shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and shall do nothing that may prejudice the Insurer's potential or actual rights of recovery with respect to Loss paid; provided the failure of one Insured Individual to comply with this provision shall not impair the rights of any other Insured Individual under this Policy.[12]

Mr. Murdock owned 40% of Dole's stock and was a director and officer of Dole.[13] Mr. Carter was Dole's president and CEO.[14] In 2013, Mr. Murdock utilized DFC, a holding

---

[10] *Id.*

[11] Motion, Ex. 1 (the old provision stated: Insureds shall not settle any Claim, select any defense counsel, incur any Defense Costs, admit or assume any liability, stipulate to any judgment without the Insurer's prior written consent, which shall not be unreasonably withheld, or otherwise assume any contractual obligation. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation, admission or stipulated judgment to which it has not consented or for which the Insureds are not legally obligated").

[12] *Id.*

[13] *Id.* at ¶ 14.

[14] *Id.* at ¶ 15.

4

company, to acquire the remaining Dole stock and take it private.[15]  Mr. Murdock completed the acquisition in November 2013.  Mr. Murdock paid shareholders $13.50 per share.[16]  Thereafter, the shareholders filed multiple lawsuits challenging the transaction's fairness.[17]

## B. IN RE DOLE FOOD COMPANY, INC. STOCKHOLDER LITIGATION

*In re Dole Food Company, Inc. Stockholder Litigation* ("Memorandum Opinion") is one of two shareholder litigations relevant to this civil action.[18]  This action was filed in the Delaware Court of Chancery (the "Chancery Court").  The Insureds were all parties to the Memorandum Opinion.[19]  The stockholders alleged Defendants engaged in a lengthy process that manipulated the stock price so that Mr. Murdock could acquire the stock at a lower price.[20]  Vice Chancellor Laster, in his Memorandum Opinion, repeatedly cited to "fraud" and "fraudulent activity."[21]  Vice Chancellor Laster found breaches of the duty of loyalty, and assessed liability against Mr. Murdock, Mr. Carter, and DFC in the amount of $148,190,590.18.[22]

On September 21, 2015, Dole's "insurance recovery counsel" wrote to the Insurers.[23]  The letter notified the Insurers that Dole was considering settlement and mediation.  It asked that the Insurers consider funding a settlement.  The Insurers all responded, citing various potential exclusions and requesting more information from Dole.[24]  On October 29, 2015, Dole

---

[15] *Id.* at ¶ 17.
[16] *Id.* at ¶ 18.
[17] *Id.*
[18] *See* C.A. No. 8703-VCL, 2015 WL 5052214, at *3-25 (Del. Ch. Aug. 27, 2015); Compl. ¶ 20.  The Court acknowledges that the term "Memorandum Opinion" is not the best defined term for a lawsuit; however, the Memorandum Opinion best memorializes what actually happened in the lawsuit.
[19] *Dole*, 2015 WL 5052214 at *1.
[20] *Id.*, at *3-25.
[21] *Id.*, at *2, 26.
[22] *Id.* at *47.
[23] Pls.' Compl. Ex. 11.
[24] *See id.* Ex. 12 (Letter from Federal Insurance Company); Ex. 13 (Letter from Arch Insurance Company); Ex. 14 (Letter from Liberty International Underwriters); Ex. 15 (Letter from Continental Insurance Company); Ex. 16 (Letter from Navigators Insurance Company); Ex. 17 (Letter from RSUI Indemnity Company); Ex. 18 (Letter from Berkley Insurance Company).

responded.[25]  Dole disagreed with Federal's reservations, and again demanded coverage for the underlying settlement.[26]

On November 5, 2015, Dole signed a term sheet settling the underlying action. On December 7, 2015, the underlying parties signed a formal Stipulation and Agreement of Settlement (the "Settlement").[27]  In lieu of an appeal, the parties settled for 100% plus interest.[28]  Mr. Murdock agreed to pay the settlement on the Defendants' behalf.  Vice Chancellor Laster approved the settlement on February 10, 2016 (the "Order and Final Judgment").[29]  The Settlement caused the Chancery Court action to be dismissed "with prejudice and in its entirety."[30]

The Insureds contend that they kept the Insurers informed as to the progress of the negotiations and provided copies of drafts of term sheets.[31]  The Insureds also state that none of the Insurers asked to participate in the settlement negotiations or objected to or commented on any of the settlement terms.[32]

On February 26, 2016, Dole's counsel wrote to the Insurers, seeking indemnification for the Settlement.[33]  The Insurers did not in the Chancery Court object to the Settlement or appeal the Order and Final Judgment.[34]

On January 13, 2016, prior to the Chancery Court's approving the Settlement, the Insurers filed this civil action.  The parties stipulated to dismiss the Insurers' claims against

---

[25] *Id.* Ex. 19.
[26] *See id.*
[27] Compl. ¶ 57.
[28] Mot. at 31.
[29] Compl., Ex. 3 at 13.
[30] *Id.* at 6.
[31] Affidavit of Pamela M. Woods ("Woods Aff."), ¶¶ 6-8.
[32] *Id.*, ¶¶ 14-18.
[33] Pls.' Compl. ¶ 59.
[34] Woods Aff., ¶¶ 18, 20.

DFC, because DFC, is not an insured under any of the policies."[35]  The Insurers filed an Amended Complaint for Declaratory Judgment (the "Amended Complaint") on April 8, 2016.

### C. SAN ANTONIO FIRE & POLICE PENSION FUND V. DOLE FOOD CO., INC.

On December 9, 2015, suit was filed against Dole and Mr. Murdock in United States District Court for the District of Delaware—*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.,* No. 1:15-CV-01140 (D. Del.)(the "San Antonio Action").[36]  The Insureds state that Dole gave the Insurers notice of the San Antonio Action.[37]  The Insurers responded over a six-month period as to their respective coverage positions.[38]  According to the Insureds, the Insurers took the same coverage positions with respect to the San Antonio Action as were taken in the Memorandum Opinion.[39]

In October 2016, the Delaware District Court scheduled an Alternative Dispute Resolution teleconference in the San Antonio Action.[40]  The Insureds notified the Insurers of this teleconference.[41]  The San Antonio Action plaintiffs then approached the Insureds about mediation, and the parties discussed the timing of such a mediation and potential mediators.[42]

The Insureds then scheduled a teleconference to discuss the potential mediation with the Insurers.[43]  During this teleconference, the Insureds stated to the Insurers that the Insureds thought it would be beneficial to mediate the San Antonio Action.[44]  The Insureds purported to identify potential mediators that had been previously discussed with the plaintiffs and asked the

---

[35] *Murdock*, 2016 WL 7414218, at *2.
[36] Woods Aff., ¶ 23.
[37] *Id.,* ¶ 24.
[38] *Id.,* ¶¶ 24, 26-28, 31, 37.
[39] *Id.*
[40] Affidavit of Alexander K. Mircheff ("Mircheff Aff."), ¶3.
[41] *Id.*
[42] *Id.,* ¶ 4.
[43] *Id.,* ¶¶ 5-6.
[44] *Id.*

Insurers for input.[45]  The Insurers provided some feedback on potential mediators but none objected to the mediation or to using Judge Layn Phillips as a mediator.[46]

Arch and Liberty asked the Insured to provide who was the Insured's damages expert and a damage assessment report during the teleconference.[47]  The Insureds refused to provide this information, claiming that it was work product or attorney-client privileged information and if it was disclosed to non-defending insurers it could be argued that the Insureds waived these privileges.[48]

The Insureds relayed to the Insurers the mediation dates.[49]  Once each Insurer signed a Mediation Confidentiality Agreement required by the mediator, the Insureds provided the mediation briefs to the Insurers.[50]  According to the Insureds, only Arch and Liberty attended the mediation and the other Insurers received telephonic updates.[51]

After the mediation, the Insureds told the Insurers that the Insureds had provisionally agreed to terms of a term sheet (the "Term Sheet").[52]  The Term Sheet was subject to the approval of Dole's board of directors within ten business days.[53]  The Insureds asked the Insurers to confirm that the Insurers would contribute to the settlement reached in the Term Sheet.[54]  The Insureds also provided the Insurers with information requested in the November 2016 teleconference—damage analyses by Dole's consulting expert—and asked them to let the

---

[45] *Id.*
[46] *Id.*
[47] Woods Aff., ¶ 30.
[48] *Id.*
[49] *Id.,* ¶ 32-35.
[50] *Id.*
[51] *Id.,* ¶ 38.
[52] *Id.,* ¶ 39.
[53] *Id.*
[54] *Id.*

8

insureds know if they needed any additional information.[55]  According to the Insureds, none of the Insurers requested additional information.[56]

The Insurers each responded to the request that it contribute to fund the settlement.[57]  The Insureds did not fund the settlement.[58]  The Insureds negotiated a final settlement (the "San Antonio Settlement") with the San Antonio Action plaintiffs.[59]  The Delaware District Court entered a Judgment Approving Class Action Settlement, finding that the settlement was "in all respects, fair, reasonable, and adequate to the Settlement Class."[60]

The Insurers did not provide prior written consent for (i) the Settlement or (ii) the San Antonio Action Settlement.

### III. PARTIES' CONTENTIONS

#### A.     The Insurers

In the Motion, the Insurers present a number of arguments.  The Insurers contend that they do not have to indemnify the Insureds because: (i) Delaware and California law does not permit indemnification under the facts here; (ii) the Insureds failed to obtain written consent prior to settling certain litigations; and (iii) the Insureds failed to cooperate with the Insurers.  In addition, the Insurers also ask the Court to grant judgment on the Insureds' fraud in the inducement and bad faith claims, contending that the such claims cannot exist when there is no duty to indemnify.  The Insurers also ask the Court to apply the doctrine of collateral estoppel, or issue preclusion, with respect to matters adjudicated in and addressed by the Chancery Court in the Memorandum Opinion.[61]

---

[55] *Id.*, ¶ 41.
[56] *Id.*, ¶ 42.
[57] *Id.*, ¶ 44.
[58] *Id.*
[59] Mirchell Aff., ¶ 10.
[60] *Id.*, Ex. G.
[61] C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015).

9

**B.     The Insureds**

The Insureds oppose the Motion, contending that the Insurers' arguments "miss the mark."  In the Opposition, the Insureds contend that the Court has already held that the Memorandum Opinion has no collateral estoppel effect and, therefore, cannot support a granting of summary judgment.  The Insureds claim that Delaware law applies to the Policies, and that Delaware public policy does not bar indemnification here.  The Insureds also argue that the facts do not support summary judgment on the issues of failure to obtain consent or cooperation.  Additionally, the Insureds claim that the Motion is premature on their tort claims because there has been no discovery in the civil proceeding.

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled.  The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[62]  Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[63]  If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[64]

---

[62] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[63] *Id.*
[64] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

10

The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[65] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[66]

## V. DISCUSSION

### A. THE COLLATERAL ESTOPPEL DOCTRINE APPLIES HERE WITH RESPECT TO THE INSUREDS AND THE MEMORANDUM OPINION.

The Court will look to Delaware law to determine whether the collateral estoppel doctrine applies to the Insureds on factual issues litigated and decided by the Memorandum Opinion.[67] In Delaware, *res judicata* refers to claim preclusion and collateral estoppel refers to issue preclusion.[68] The two principles are distinct. "Under the doctrine of *res judicata*, a judgment in a prior suit involving the same parties, or persons in privity with them, bars a second suit on the same cause of action."[69] The doctrine of collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously.[70]

Under collateral estoppel "a judgment in a prior suit does not operate to bar a subsequent cause of action but rather precludes the relitigation of a factual issue which was litigated and decided in in prior suit between the same parties."[71] "[O]nly parties to the former judgment or their privies may take advantage of or be barred by it."[72] "A privy is one who, after the rendition

---

[65] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[66] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[67] *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 95 cmt (e) ("the local law of the State where the judgment was rendered determines the collateral estoppel effect of the judgment in subsequent litigation"). Both parties cite to Delaware authority when arguing collateral estoppel.
[68] *See Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006) (stating *res judicata* test); *M.G. Bancorporation v. Le Beau*, 737 A.2d 513, 520 (Del. 1999) (stating collateral estoppel test).
[69] *Khols v. Kenetech Corp.*, 791 A.2d 763, 767 (Del. Ch. 2000), *aff'd* 794 A.2d 1160 (Del. 2002) (emphasis added).
[70] *M.G. Bancorporation*, 737 A.2d at 520.
[71] *Id.*
[72] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1217 (Del. 1991).

11

of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties. . . ."[73] The Court expanded the notion and found that "privity, need not be present in order to apply collateral estoppel . . . [if the party] had a full and fair opportunity to present [its] case."[74] In order to adopt the previous court's ruling on an issue, the party wishing to enforce that ruling must show "that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment."[75] Further, new issues being estopped must involve a party from the first case and that party must have had a "full and fair opportunity to litigate the issue in the prior action."[76]

Collateral estoppel only prevents particular issues previously litigated from being challenged. In *Stephenson v. Capano Dev., Inc.*, the plaintiff filed several claims in the Court of Chancery.[77] The Chancellor refused to consider plaintiff's fraud claim because it was untimely filed.[78] Following this decision, the plaintiff filed suit in the Superior Court based on the defendant's fraud.[79] The Superior Court judge found that any findings of fact would receive collateral estoppel effect, but *res judicata* was inapplicable because the Chancellor did not address the legal merits of the plaintiff's fraud claim for procedural reasons.[80]

---

[73] *Id.*

[74] *Michell v. Cook*, 2001 WL 1729136, at *2 (Del. Super. Dec. 10, 2001) (citing *Chrysler Corp., v. New Castle County*, 464 A.2d 75, 79 (Del. Super. 1983)).

[75] *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999).

[76] *Id; Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000).

[77] 462 A.2d 1069, 1070 (Del. 1983).

[78] *Id.*

[79] *Id.*

[80] *Id.* at 1072-73. *See Acierno v. New Castle County,* 679 A.2d 455 (Del. 1996) (Delaware Supreme Court holding that the Court of Chancery was not required to adopt the federal court's determination because "the issues presented to the two courts [were] not the same." Court of Chancery decided a procedural issue. The District Court decided a constitutional issue.). *But see M.G. Bancorporation, Inc.*, 737 A.2d at 520 (finding that relitigation of a court's factual finding rejecting a value of a share was barred by collateral estoppel).

Generally, a dismissal with prejudice has the effect of a final adjudication on the merits."[81] When parties "voluntarily dismiss[ ] the action, knowing that they either received the full relief to which they were legally entitled, or that they waived their rights to seek further relief, the dismissal is tantamount to a judgment on the merits."[82] "[F]inality is neither a precise nor a rigid concept."[83] "It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion."[84] "[F]inality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again"[85] or include "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."[86]

The Delaware Supreme Court has found that "once interlocutory rulings achieve finality at the trial level, through incorporation in the final judgment of the trial court, review of those subsidiary rulings must be achieved through a timely appeal of that final order."[87]

The Court put the parties on notice during the May 1, 2017 Scheduling Conference (the "Scheduling Conference") that the Court might apply collateral estoppel with respect to the Memorandum Opinion.[88] During the Scheduling Conference, the Court told the parties that the Court is "not going to re-litigate matters that have been litigated in a case."[89] "The question was whether it's a final non-appealable order, that's different as to whether a judge found a fact after

[81] *Wash. H. Condominum Assn. of Unit Owners* v. Daystar Sills, Inc., 2017 WL 3412079, at *22 (Del. Super. Aug. 8, 2017) (quoting *Fields v. Frazier*, 2005 WL 319382, at *2 (Del. Super. Ct. Nov. 21, 2005)) (internal quotations omitted).
[82] *Fields*, 2005 WL 319382, at *2.
[83] *In re Natl. Auto Credit, Inc. - Shareholders Litig.*, 2004 WL 1859825, at *3 (Del. Ch. Aug. 3, 2004).
[84] *Id.* at *3 n.19 (quoting *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000)).
[85] *Yucaipa Am. All. Fund I, LP v. SBDRE LLC*, 2014 WL 5509787, at *12 n.51 (Del. Ch. Oct. 31, 2014) (quoting *Free Speech Coal, Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012)).
[86] *Yucaipa*, 2014 WL 5509787, at *12 n.51 (quoting Restatement (Second) of Judgments § 13).
[87] *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 580 (Del. 2002) (finding that a lengthy opinion on the merits of a party's claim became final under the final judgment rule once the parties consummated the settlement).
[88] Reply, Ex. 20.
[89] *Id.* at 15.

13

hearing it."[90]  "[I]t would be at least collateral estoppel, and I'm not going to put in front of a jury a fact that a judge has had on the same question."[91]  "That's a big difference between finding that contractually you agreed to a final non-appealable order. . . ."[92]  "I'm not going to re-litigate an issue that somebody testifies under oath and Vice Chancellor Laster makes findings, a very long specific decision. . . ."[93]

Vice Chancellor Laster's Memorandum Opinion is sufficiently firm to be accorded conclusive effect for collateral estoppel.  Vice Chancellor Laster issued a 106-page opinion discussing Mr. Murdock's and Mr. Carter's breach of the duty of loyalty after a trial.  The trial lasted nine days and involved: (i) the introduction of 1,800 exhibits; (ii) the live testimony of ten fact witnesses and three expert witnesses; (iv) the lodging of twenty-nine depositions; (v) a 419 paragraph pre-trial order; and (vi) pre- and post-trial briefing that totaled 668 pages. [94]  Although the Memorandum Opinion may not be sufficient under *res judiciata*, the lengthy opinion goes into detail about the findings of Mr. Murdock's fraudulent activities that breached the duty of loyalty to the shareholders.  Vice Chancellor Laster specifically found that "Murdock and Carter's conduct throughout the Committee process . . . demonstrated that their actions were not innocent or inadvertent, but rather intentional and in bad faith."[95]  Further, the Memorandum Opinion finds that defendants, including Mr. Murdock, "engaged in fraud."[96]

As to the finality of the Memorandum Opinion, Vice Chancellor Laster ends the Memorandum Opinion by saying that the "parties will confer and advise the court as to any

---

[90] *Id.*
[91] *Id.* at 15-16.
[92] *Id.* at 16.
[93] *Id.*
[94] *Id.* at *2.
[95] *In re Dole Food Co., Stockholder Litig.*, 2015 WL 5052214, at *2.
[96] *Id.* at *46.

issues that remain to be addressed."[97]  After Vice Chancellor Laster issued the Memorandum Opinion, the Parties reached the Settlement.  The Memorandum Opinion is sufficiently definite to be a final judgment on the merits.  The 106 page opinion talks in detail about the scheme used by Mr. Murdock and his co-defendants to drive down the price of Dole.  Additionally, the Settlement rendered the Memorandum Opinion final for collateral estoppel.[98]

The Court holds that collateral estoppel *vis a vis* the Memorandum Opinion applies to this civil action and the Motion.  First, factual issues relevant to this civil action and the Motion are factual issues decided by the Memorandum Opinion.  Second, the Memorandum Opinion is "finally adjudicated" for purposes of collateral estoppel.  Third, the Insureds were parties to the litigation memorialized in the Memorandum Opinion.  Fourth, the Insureds have had their day in court on the facts addressed in the Memorandum Opinion.  For these reasons, the Court will employ collateral estoppel against the Insureds on factual issues determined in the Memorandum Opinion to the extent those factual issues are relevant to issues in this civil action.

### B. DELAWARE LAW APPLIES TO THIS CIVIL ACTION AND NEITHER DELAWARE LAW NOR DELAWARE PUBLIC POLICY PRECLUDES INDEMNIFICATION HERE.

*i. Choice of Law*

The Policies do not contain a choice of law provision.  The Insurers argue that California law applies, noting that Dole's management and board are located in California, and that Mr. Murdock and Mr. Carter are located in California.  The Insurers also contend that the underlying facts supporting the Memorandum Decision mostly occurred in California.  The Insureds claim that Delaware law applies, arguing that Dole is a Delaware corporation and Mr. Murdock and Mr. Carter were directors and officers of Dole.  The Insureds go on to argue that Delaware has a

---

[97] *Id.* at *47.
[98] *See Defillipo v. Quarles*, 2010 WL 702310, at *3 (Del. Super. Feb. 26, 2010) (applying collateral estoppel effect to an order resolving a motion for partial summary judgment).

direct interest because (i) Dole had the authority to obtain the Policies under Delaware law, 8 *Del. C.* § 145(g), and (ii) Delaware law ultimately determines whether an officer or director has violated duties owed to the company, its shareholders and its investors.

The Court did not address or decide whether Delaware or California law would apply to this civil action in the MTD Opinion. For purposes of the Motion, the Court must make such a determination. As set forth below, the Court holds that Delaware law applies in this civil action.

The first step in a conflict-of-law analysis is to decide whether a conflict truly exists. The Court must compare the competing jurisdictions to determine whether the laws actually conflict on a relevant point."[99] "In determining whether there is an actual conflict, Delaware state courts . . . answer a single and simple inquiry: does application of the competing laws yield the same result?"[100] If the answer is yes, then "the Court should avoid the choice-of-law analysis altogether."[101]

Further, the laws of competing jurisdictions must actually conflict to require an analysis. When one state's laws failed to address a particular issue, it cannot conflict with the laws of another state.[102] Where one state fails to address a particular issue, the Court should apply the settled law.[103]

The parties disagree about what law applies to this case. Plaintiffs argue that California law applies. The Defendants argue that Delaware law applies.

---

[99] *Vichi v. Koninklijke Philips Electronics, N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014).
[100] *Laugell v. Bell Helicopter Textron, Inc.*, 2013 WL 5460164, at *2 (Del. Super. Oct. 1, 2013).
[101] *Vichi*, 85 A.3d at 773.
[102] *See Mills Ltd. P'ship v. Liberty Mut. Ins. Co.*, 2010 WL 8250837, at * 4 (Del. Super. Nov. 5, 2010); *Deuley v. DanCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010).
[103] *See Mills Ltd. Partn.*, 2010 WL 8250837, at *4 (applying Delaware law to exhaustion issue since Delaware's approach to exhaustion is in the mainstream and Virginia law had not addressed the issue before).

As the forum state, Delaware applies its own choice-of-law rules.[104] The Court must use the most significant relationship test set forth in Restatement (Second) of Conflict of Laws Section 188.[105] Section 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in [Restatement (Second) of Conflict of Laws] § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.

The Court evaluates the contacts based on their relative importance with each particular issue.[106]

"The state where the thing or the risk is located will have a natural interest in transactions affecting it."[107] Restatement (Second) of Conflict of Laws § 6 also enumerates several factors to relevant to the choice of law:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,

---

[104] *Shook & Fletcher Asbestos Settlement Tr. v. Safety Nat'l Cas. Corp.*, 2005 WL 2436193, at *2 (Del. Super. Ct. Sept. 29, 2005), *aff'd,* 909 A.2d 125 (Del. 2006).

[105] *Oliver B. Cannon and Son, Inc. v. Dorr–Oliver, Inc.*, 394 A.2d 1160, 1166 (Del. 1978).

[106] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188.

[107] *Id.* at § 188, cmt. e.

17

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.[108]

"In complex insurance cases with risks in multiple states such as this one, Delaware courts have generally held that the most significant factor for the conflict-of-law analysis is the principal place of business of the insured because it is 'the situs which link[s] all the parties together.'"[109]  However, when the "risk is the directors' and officers' honesty and fidelity to the corporation, and the choice of law is between the headquarters or the state of incorporation, the state of incorporation has the most significant relationship."[110]  The Court notes that the first legal principle relied upon involves insurance cases with general comprehensive liability policies.  The second legal principle is a situation, like the one here, involving director and officer liability insurance coverage.

Delaware and California law conflict regarding whether an insurance policy covers a director or officer's willful or wanton actions.[111]  As the Insurers note, Cal. Ins. Code § 533

---

[108] *Id.* at § 6.

[109] *Catlin Specialty Ins. Co. v. CBL & Assoc. Properties, Inc.*, 2017 WL 4784432, at *5 (Del. Super Sept. 20, 2017) (citing *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 1991 WL 236936 (Del. Super. Ct. Oct. 29, 1991)).  *See also Liggett Group Inc. v. Affiliated RM Ins. Co.*, 788 A.2d 134 (Del. Super. 2001)(providing in depth analysis of complex insurance case with risks in multiple states).

[110] *Mills Ltd. Partn. v. Liberty Mut. Ins. Co.*, C.A. No. 09C-11-174 FSS, 2010 WL 8250837, at *6 (Del. Super. Nov. 5, 2010); *see also* 11 *Del. C.* § 3114 (every resident or nonresident who "accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this state . . . shall by such acceptance" authorize the registered agent or Secretary of State to accept service on behalf of the director, trustee or member and such acceptance shall be the equivalent of service made upon the director, trustee or member within the state).  *But see Catlin Specialty Ins. Co. v. CBL & Assoc. Properties, Inc.*, 2017 WL 4784432, at *1, 4-5 (Del. Super. Sept. 20, 2017) (applying the law of the state of incorporation for the insurance policy protecting the company from a fraudulent scheme to overcharge consumers not involving a D&O policy).

[111] *See Part VI.B.*

18

("Section 533") provides that "[a]n insurer is not liable for a loss caused by the willful act of the insured's agents or others."  Section 533 is "an implied exclusionary clause which by statute is to be read into all insurance policies," regardless of the policy's language.[112]  The Insurers rely upon Section 533 and the Memorandum Opinion, and contend that the Insureds have committed fraud to affect the purchase price of stock and the Insurers cannot be liable for a loss related to that fraud.

Delaware does not have a statute similar to Section 533.  However, Delaware law does provide that:

> …a corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation, . . . *against any liability* asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the corporation would have the power to indemnify such person against such liability under this section. [113]

Under Delaware law, therefore, a corporation is permitted to purchase insurance against any liability asserted against an officer or director even when the corporation would not be able to otherwise indemnify that person under 8 *Del. C.* § 145.  This would include insurance for a breach of the duty of loyalty—the determination made in the Memorandum Opinion.

The Insurers rely heavily on *Liggett Group Inc. v. Affiliated FM Ins. Co.*[114]  That is a very well-reasoned opinion and strong authority on the issue of choice of law in complex insurance coverage situations.  *Liggett* involves defense and indemnification claims arising out of more than one-thousand tobacco health related claims filed throughout the United States.[115]  However, *Liggett* discusses choice of law as it relates to general comprehensive liability policies and not an officer and director insurance policy.[116]

---

[112] *J.C. Penny Cas. Ins. Co. v. M.K.,* 278 Cal. Rptr. 64, 69 (1991), cert. denied, 502 U.S. 902 (1991).
[113] 8 *Del. C.* § 145(g) (emphasis added).
[114] 788 A.2d 134 (Del. Super. 2001).
[115] *Id*. at 136.
[116] *Id*.

19

The Court finds that the better authority for this situation is *Mills Ltd. Partnership v. Liberty Mut. Ins. Co.*[117] *Mills Ltd. Partnership* addresses the choice of law issue in the context of an officer and director insurance policy.[118] The underlying loss involved the officers and directors of Mills Ltd. Partnership ("Mills") using their positions to defraud investors in various ways, including lying about Mills' financial pictures.[119] Mills eventually admitted massive fraudulent overstatements of income, shareholders' equity and partners' capital for close to six years.[120]

In *Mills Ltd. Partnership,* the Court needed to determine whether Virginia or Delaware law applied.[121] Mills was a Delaware corporation. Mills' headquarters was in Virginia and, most likely, Virginia was where most of the fraud occurred. As in this case, the insurance companies failed to provide a choice of law provision in the policy. The Court undertook a choice of law analysis using the Restatement.[122] The Court held that:

> When the insured risk is the directors' and officers' "honesty and fidelity" to the corporation, and the choice of law is between the headquarters or the state of incorporation, the state of incorporation has the most significant relationship.[123]

The Court found that Mills insured its officers and directors under Delaware law—8 *Del. C.* § 145(g).[124] The Court noted that, ultimately, Delaware law would determine whether an officer or director had breached a duty owed to Mills, Mills' shareholders, and Mills' investors.[125] Unlike *Liggett*, the Court noted that the underlying suit did not involve products

---

[117] C.A. No. 09C-11-174 FSS, 2010 WL 8250837 (Del. Super. Nov. 5, 2010).
[118] *Id*., at *1.
[119] *Id*., at *2.
[120] *Id*.
[121] *Id*., at *5-6.
[122] *Id*.
[123] *Id*., at *6.
[124] *Id.*
[125] *Id.*

liability, consumer fraud or an embezzlement situation.[126]  In *Mills Ltd. Partnership*, the Court

found that the place of incorporation is a more significant contact because "[w]hen the conduct

of a corporation's directors and officers is centrally implicated, the place of incorporation is

important."[127]

In this case, the Policies covered directors, officers and corporate liability.  The Policies

do not contain a choice of law provision.  In addition, Dole is a Delaware corporation and Mr.

Murdock and Mr. Carter are directors and officers of a Delaware corporation.  The suit was

brought by stockholders of Dole in the Chancery Court.  The situs of Dole's stock is

Delaware.[128]  The Chancery Court applied Delaware law in holding that the duty of loyalty had

been breached and that the value of Dole's stock had been artificially decreased due to fraudulent

conduct.  Under these facts, Delaware and not California has the more significant interest and

Delaware law will apply in this civil action

### ii. Delaware Public Policy Does Not Prohibit Insurers from Paying for Insureds' Fraud

A court may not enforce an insurance provision that is contrary to Delaware public

policy.[129]  A court will not void an otherwise valid contract provision based on public policy "in

the absence of clear indicia that such a policy actually exists."[130]  The Court has found no

Delaware decision that holds that a corporation cannot obtain directors and officers liability

---

[126] *Id.*

[127] *Id.* ("Although Virginia also allows its corporations to insure themselves and their directors and officers, Virginia has, at best, an indirect interest in whether Delaware corporations insure their directors and officers. Again, the point is that Liberty Mutual insured Mills's directors and officers under Delaware law. Those directors and officers caused a Delaware corporation to defraud its investors, which made the corporation liable and triggered the corporation's D & O policy. In a case like this, what difference does headquarters' location make to the company or the people involved?").

[128] 8 *Del. C.* § 169.

[129] *See J.S. Alberici Construction Co. v. Mid-West Conveyor Co.*, 750 A.2d 518 (Del. 2000).

[130] *Whalen v. On-Deck, Inc.*, 514 A.2d 1072, 1074 (Del. 1986).

insurance that covers breach of loyalty based on fraud.[131] Moreover, Section 145(g) of Title 8 of the Delaware Code provides that a corporation has the power to purchase and maintain insurance on behalf of directors and officers against any liability that could be asserted against them.[132]

In *Whalen v. ON-Deck, Inc.*, the Delaware Supreme Court found that Delaware public policy did not prohibit insurance provisions that cover punitive damages.[133] The Court reasoned that although the "purposes of punitive damages would be frustrated if such damages were insurable, we cannot infer from that concern a policy against such insurance."[134] A person insured for punitive damages could be "punished through higher insurance premiums or the loss of insurance altogether."[135] Finally, a court will not void an otherwise valid provision in "the absence of clear indicia that such a policy actually exists."[136]

In this case, any alleged fraud would be reckless or knowing conduct.[137] Although it may strain public policy to allow a director to collect insurance on a fraud, it does not appear to explicitly prohibited by Delaware statutory law. In fact, the *Whalen* court found that public policy did not prohibit insurance companies from covering punitive damages. Punitive damages

---

[131] While the issue was not addressed in *Mills Ltd. Partnership*, the insureds were seeking indemnification for breach of loyalty based upon fraudulent concealment. Although not addressed, the Court did not hold that indemnification was not available due to the breach of loyalty, and none of the excess layer insurers sought to avoid coverage on a public policy argument. In fact, the primary coverage insurers indemnified the insureds. *See Mills Ltd. Partnership*, 2010 WL 8250837, at *1-4.

[132] 8 *Del. C.* §145(g).

[133] *Whalen*, 514 A.2d at 1074.

[134] *Id.*

[135] *Id.*

[136] *Id*; *see also J.S. Alberici*, 750 A.2d at 520-21 (finding that a contractual provision requiring anyone to indemnify another party for the other party's own negligence in a contractor/subcontractor relationship violates Delaware public policy because the statute explicitly states that such action "is against public policy and is void and unenforceable."); *Yoder v. Delmarva Power & Light Co.*, 2003 WL 26066796, at *4 (Del. Super. Dec. 31, 2003) (distinguishing the case, because "no statute specifically provided that such provisions were against public policy and void and unenforceable. . . .").

[137] *See Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) (listing the elements of fraud as: "(1) a false representation, usually one of fact . . .; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.").

are awarded for willful or wanton actions.[138]  Therefore, Delaware public policy does not clearly prohibit Insurers from indemnifying the Insureds' fraud.  As such, the Court will not grant the Motion on a claim that indemnification would violate Delaware public policy.

### C. SUMMARY JUDGMENT IS PREMATURE ON THE ISSUES OF PRIOR WRITTEN CONSENT, COOPERATION AND THE BAD FAITH COUNTERCLAIM

#### i. Under Delaware Law, the Insurers Have Not Shown Sufficient Prejudice From the Insureds' Violation of the Written Consent Provision to obtain judgment at this stage of the proceedings.

This Court discussed how to construe an insurance policy in the MTD Decision.[139]  Insurance policies "are construed as a whole, to give effect to the parties' intentions."[140]  In other words, the Court is to interpret the insurance policy through a reading of all of the relevant provisions of the contract as a whole, "and not on any single passage in isolation."[141]  Moreover, an interpretation that gives effect to all the terms of an insurance policy is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive.[142]  The Court is also to interpret an insurance policy in a manner that does not render any provisions "illusory or meaningless."[143]

Where the language of an insurance policy is "clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[144]  Ambiguous insurance policy language is construed in the insured's favor—*i.e.*, under the doctrine of *contra proferentem*, the language of an insurance policy must be construed most strongly against the

---

[138] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).
[139] *See Murdock*, 2016 WL 7414218, at *4.
[140] *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007).
[141] *O'Brien v. Progressive Northern Ins.*, 785 A.2d 281, 287 (Del. 2001). *See also Chicago Bridge & Iron Co. N. U, v. Westinghouse Elec. Co.*, 166 A.3d 912, 912 (Del. 2017).
[142] *O'Brien,* 785 A.2d at 287.
[143] *Id.* (*quoting* from *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. Super. 1992)).
[144] *Faraday Capital Ltd.*, 918 A.2d at 1108.

insurance company that drafted the policy.[145]  This is because insurance contracts are contracts

of adhesion.[146]  An insurance policy is ambiguous when the provisions at issue "are reasonably

or fairly susceptible of different interpretations or may have two or more different meanings."[147]

An insurance policy is not ambiguous merely because the parties do not agree on the proper

construction.[148]

Coverage language is interpreted broadly to protect the insured's objectively reasonable

expectations.[149]  Exclusionary clauses, on the other hand, are "accorded a strict and narrow

construction."[150]  Even so, courts will give effect to exclusionary language where it is found to

be "specific," "clear," "plain," "conspicuous" and "not contrary to public policy."[151]  The Court

also recognizes that case law exists that permits judicial application of the reasonable expectation

doctrine to fulfill an insured's expectations even where those expectations contravene the

unambiguous, plain meaning of exclusionary clauses.[152]

The Policy states that "[i]t shall be the Insureds' duty and not the Insurer's duty to defend

Claims, including the investigation and evaluation of any Shareholder Derivative Demand."[153]

---

[145] *O'Brien*, 785 A.2d at 288; *see also Weiner v. Selective Way Ins. Co.*, 793 A.2d 434, 440 (Del. Super. 2002); *AIU Insurance Co.*, 729 P.2d at 1264–65.

[146] *See State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974) (holding that an insurance contract is "an adhesion contract, not a truly consensual agreement."). *See also J.C. Penney Cas. Ins. Co. v. M.K.*, 804 P.2d 689, 694, n. 9 (Cal. 1991) ("The premise of the strict-construction rule is that an insurance policy is an adhesion contract drafted by the insurer[.]").

[147] *Weiner,* 793 A.2d at 440*; see also Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627 (Cal. 1995).

[148] *O'Brien*, 785 A.2d at 288; s*ee also Waller,* 900 P.2d at 627 ("Courts will not strain to create an ambiguity where none exists.").

[149] *AT&T Corp. v. Clarendon Am. Ins. Co.*, C.A. No. 04C–11–167(JRJ), 2006 WL 1382268, at *9 (Del. Super. April 25, 2006), *rev'd in part on other grounds*, *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104 (Del. 2007). *See also Safeco Ins. Co. of America,* 28 P.3d at 893.

[150] *AT&T Corp.,* 2006 WL 1382268, at *9; s*ee also E.M.M.I. Inc. v. Zurich American Ins. Co.,* 84 P.3d 385, 389 (Cal. 2004).

[151] *AT&T Corp.*, 2006 WL 1382268, at *9; *see also MacKinnon v. Truck Ins. Exchange,* 73 P.3d 1205, 1213 (Cal. 2003).

[152] *AT&T Corp.*, 2006 WL 1382268, at *9, n. 123 (citing and reviewing cases that utilized the "reasonable expectation doctrine").

[153] Motion, Ex 1.

Further, "Insureds shall not settle any Claim, select any defense counsel, incur any Defense Costs, admit or assume any liability, stipulate to any judgment without the Insurer's prior written consent, which shall not be unreasonably withheld, or otherwise assume any contractual obligation."[154]

Consent to settle provisions do not provide an insurer an absolute right to veto a reasonable settlement.[155] Rather, the main purpose of the consent provision is to protect the insurer from prejudice.[156] An insurer is not free from liability in an "absence of a showing that the breach caused the insurer to suffer prejudice."[157]

A party may demonstrate prejudice on the face of pleadings.[158] If there are issues of material fact, the Court may find a presumption of prejudice that is rebuttable and is not properly resolved conclusively on a motion for summary judgment.[159] However, the Court may find a lack of prejudice on a motion for summary judgment.[160]

The Insurers have demonstrated that they did not provide prior written consent to the Settlement or the San Antonio Action Settlement. However, the Insurers have not shown prejudice. Moreover, there may be a factual issue as to whether prior written consent was unreasonably withheld. The Insurers argue that the Insured prejudiced the Insurers by settling the claim for 100% of the value of the case. However, the Insurers have not shown how they would have settled the case differently or what would have changed if they had been involved in

---

[154] *Id.*

[155] *Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co. of Canada*, 2007 WL 1811265, at *12 (Del. Super. June 20, 2007).

[156] *Id.*

[157] *Allstate Ins. Co. v. Fie*, 2006 WL 1520088, at *3 (Del. Super. Mar. 9, 2006).

[158] *Id.* at *4 (citing *Hall v. Allstate Ins. Co.*, 1985 WL 1137299 (Del. Super. Jan. 11, 1985)).

[159] *Id.*

[160] *U-Haul Co. of Penn. v. Utica Mut. Ins. Co.*, 2013 WL 1726192, at *4 (D.Del. Mar. 28, 2013), *aff'd*, 565 Fed. Appx. 87 (3d Cir. 2014).

the case from the beginning. Further, the Insureds argue that they put the Insurers on notice and that the Insurers failed to take any action relating to the litigation and settlements.

The Insured argue that they sent letters and emails to update the insurers on the progress of the settlement negotiations.[161] Further, the Insureds asked the Insurers to fund a settlement, confirm that the Insurers had no objections to the settlement, and inform the Insureds of any concerns.

### ii. The Record is not Developed Enough to Grant Judgment on Issues Relating to the Cooperation Clause

The Cooperation Clause states: "Insureds shall provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and shall do nothing that may prejudice the Insurer's potential or actual rights of recovery with respect to Loss paid on account of a Claim."[162]

Cooperation clauses are "material to the insurance contract and a substantial breach of the provision by the insured provides a legitimate defense to the insurer if factually proven."[163] Cooperation clauses are meant to "prevent collusion between the insured and the inured party and to allow the insurer an opportunity to conduct a reasonable investigation of the underlying claim."[164] If the insured failed to cooperate with the insurer, then the insurer may raise "noncooperation as a defense to liability for coverage above the statutory minimum."[165]

---

[161] Woods Aff. and Mircheff Aff.
[162] Motion, Ex 1.
[163] *Harris v. Prudential Prop. & Cas. Ins., Co.*, 632 A.2d 1380, 1382 (Del. 1993); *see also E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 1995 WL 654010, at *8 (Del. Super. Oct. 27, 1995) (stating that "Delaware Courts have not required a showing of prejudice as a result of a breach of an assistance and cooperation clause. However, . . . prejudice may have a bearing on the materiality of the breach.").
[164] *Id.*
[165] *Id.* at 1383.

In *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, the insurers sought summary judgment against the insured for failing to abide by the assistance and cooperation provision.[166] The Court determined that insurers do not need to show prejudice, but prejudice may be a factor bearing on the materiality of the breach.[167] The Court held that the issue was not ripe for summary judgment because issues of material fact remained.[168] The insurers argued that the insured failed to provide information requested under the clause.[169] The insured argued that the insurers failed to actively become involved in the case.[170] This created a material issue of fact.[171]

The record is not clear whether there was a substantial breach of the Cooperation Clause. The Insureds argue that Insurers "neither associated in the defense of these lawsuits nor accepted coverage."[172] The Insurers never reserved their rights to deny coverage or failed to respond to the Insureds' notice relating to the San Antonio lawsuit.[173] Since Insurers did not take action, the Insureds were permitted to make reasonable decisions to defend themselves.[174]

Insurers argue that the Insureds breached the Cooperation Clause. Insurers admit that the Insureds told the Insurers about the discussions to settle the *Stockholder* Action, but negotiated the Term Sheet without the Insurers participation. Further, Insureds did not dispute that they refused requests to provide basic information about the *San Antonio* action.

There appears to be a material issue of fact of whether there was a substantial breach of the cooperation provision.

---

[166] 1995 WL 654010, at *8.
[167] *Id.*
[168] *Id.* at *10.
[169] *Id.* at *9.
[170] *Id.* at 9-10.
[171] *Id.* at *10.
[172] Opposition, at 34-35.
[173] *Id.* at 35.
[174] *Id.*

### *iii. The Record Needs Development on the Bad Faith Counterclaim*

The Motion on Insureds' counterclaims for bad faith is pre-mature. A denial of a claim that not validly made cannot be an act of bad faith or unfair dealing.[175] The Court may allow a bad faith claim and award punitive damages if "the denial of coverage is willful or malicious . . . [and] when the bad faith actions of the insurer are taken with a reckless indifference or malice toward the plight of the injured . . . [or the] breach is particularly egregious."[176]

The Insurers' advance a rather well reasoned argument for why coverage to the Insureds was denied. However, the Insureds demonstrate in the Opposition that the record is incomplete and the Bad Faith Counterclaim, as plead, provides facts for a bad faith denial of coverage. The Court notes that discovery has just begun in this civil action. At this point in the case, the Court cannot find that there are no genuine issues of material fact and that the Insurers are entitled to judgment as a matter of law. The Insureds will need some time to develop this claim. It does not appear that the Insurers are seeking a declaratory judgment in bad faith; however, it is premature for the Court to rule on the issue at this time.

### D. THE FRAUD IN THE INDUCEMENT COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND ARE DISMISSED WITH PREJUDICE.

The Insureds each assert a counterclaim for fraud in the inducement (the "Fraudulent Inducement Counterclaims"). In the Fraudulent Inducement Counterclaims, the Insureds contend that the Insurers induced Dole to enter into the Policies by representing that the Insurers would indemnify the Insureds for a Loss unless the Loss arose from deliberate criminal or fraudulent acts as established by a final and non-appealable adjudication adverse to the Insureds.

---

[175] *See Brandywin Flowers, Inc. v. W. Am. Ins. Co.*, 1993 WL 133176, at *3 (Del. Super. April 19, 1993).
[176] *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996).

The Insureds claims that the Insurers' representation was false and that the Insurers never intended to perform under the Policies.

Delaware courts have consistently held that to successfully plead a fraud claim, the allegedly defrauded plaintiff must have sustained damages as a result of a defendant's action."[177] The damages allegations may not simply 'rehash' the damages allegedly caused by the breach of contract."[178] Further, Delaware law holds that a plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations."[179] In other words, a plaintiff cannot state a claim for fraud simply by adding the term "fraudulently induced" to a complaint.[180] Thus, couching an alleged failure to comply with a contract as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is "exactly the type of bootstrapping this Court will not entertain."[181]

The Court holds that the Fraudulent Inducement Counterclaims are contract claims "bootstrapped" into fraudulent inducement claims. The Insureds remedy is for breach of the Policies and not that Dole and/or the Insureds were fraudulent induced into purchasing the Policies. The Insureds are couching an alleged failure by the Insurers to comply with a contract—*i.e.*, the Policies—as a failure to disclose an intention by the Insurers that they would ever take certain actions consistent with that contract. This is exactly the type of bootstrapping this Court will not entertain. Accordingly, the Court will **DISMISS** the Fraudulent Inducement Counterclaims with prejudice.

---

[177] *ITW Glob. Investments Inc. v. Am. Indus. Partners Capital Fund IV, L.P.,* 2015 WL 3970908, at *5 (Del. Super. June 24, 2015).
[178] *Id.*
[179] *Narrowstep, Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010).
[180] *Id.*
[181] *Id.*

## VI. CONCLUSION

For the reasons set forth above, the Court will **DENY** in part and **GRANT** in part the Motion. The Court holds that: (1) the Insureds are collaterally estoppel from relitigating the Memorandum Opinion's factual determinations, including those of fraud and disloyalty, to the extent those factual determinations are relevant to this civil action; (2) Delaware law applies to the Policies; (3) Delaware law and/or public policy does not excuse the Insurers from indemnifying for breach of loyalty based upon fraud; (4) the Court will not grant judgment on the issues of consent, cooperation or the Bad Faith Counterclaim because the factual record has not yet been developed enough; (5) the Fraudulent Inducement Counterclaims are dismissed with prejudice for failing to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge